IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AIMEE MUI, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AAQ-22-2984 |
| SHAWN WEASER, *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION AND ORDER**

This is a case arising out of an alleged "hit and run" car accident. Pending before the Court is Defendant CEVA Logistics U.S., Inc.'s ("CEVA Logistics") Motion to Dismiss Plaintiffs' First Amended Complaint, as well as Defendant Shawn Weaser's Motion to Dismiss the same. ECF Nos. 19, 24. The basic disputes before the Court concern: 1) whether the Plaintiffs – Aimee ("Ms. Mui") and Vincent Mui ("Mr. Mui") – sued the company which actually owned the truck that struck their vehicle; and 2) whether Plaintiffs' initial Complaint provided sufficient notice to Mr. Weaser that he would be named in the Amended Complaint. For the reasons discussed below, Defendants' respective motions shall be denied.

**BACKGROUND**

Plaintiffs Aimee and Vincent Mui are residents of Rockville, Maryland.[1] ECF No. 12, at 1-2. On November 27, 2019, at approximately 12:23 A.M. Eastern Standard Time, Mr. Mui was operating a motor vehicle in which Ms. Mui was sitting, "traveling eastbound on the Brooklyn-Queens Expressway in Brooklyn, New York." *Id.* at 3. According to Plaintiffs' Complaint, the

---

[1] Because the case is currently before the Court on Defendants' Motions to Dismiss, I accept all well-pled allegations, other than those relating to subject-matter jurisdiction, as true for the purpose of deciding the Motions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Muis' vehicle was struck by a semi-trailer truck operated by Mr. Weaser who then allegedly fled the scene. *Id.* Although Mr. and Ms. Mui followed the vehicle, attempting to get its attention, Mr. Weaser continued to drive away with increasing speed. ECF No. 22-3, at 28. "As a direct result of the collision . . . Plaintiffs Vincent and Aimee Mui [allege they] suffered both permanent and extreme physical and emotional injuries, of which they continue to suffer." ECF No. 12, at 3.

For the purpose of the present Motions, the main sources of dispute between the parties are who Mr. Weaser was working for, who owned the truck he was operating, and when Plaintiffs should have known these facts. Plaintiffs allege that CEVA Logistics owned the truck, which had a license plate reading, at least in part, "1011JD OK." *Id.*; *see also* ECF No. 22-3, at 29; ECF No. 23-3, at 20. The allegations in their Complaint are supported by a photograph of the back of the vehicle displaying the name "CEVA Logistics." ECF No. 22-3, at 19. Additionally, the door on the driver's side of the vehicle was imprinted with the word "CEVA". *Id.* at 21.

Conversely, CEVA Logistics submits, supported by an affidavit from its Fleet Safety Manager, that the company "does not own, possess, maintain control, manage or operate a semi-trailer truck with the license plate number 1011JD." ECF No. 19-3, at 1. Additionally, the company allegedly "does not own, possess, maintain, control, manage, or operate any equipment, including the tractor and/or trailer that was involved in the alleged accident on November 27, 2019, on the Brooklyn-Queens Expressway in Brooklyn, NY." *Id.* at 2. Finally, the company asserts that Mr. Weaser "does not now, and has never in the past had any employment and/or agency relationship with CEVA Logistics US, Inc., at the time of the alleged November 27, 2019, incident." *Id.* at 3.

In further support of its position, CEVA Logistics also references a U.S. Department of Transportation number printed on the side of the vehicle. ECF No. 19-1, at 7-12. According to

the U.S. Department of Transportation's Federal Motor Carrier Safety Administration Safety and Fitness Electronic Records System, the USDOT number identifies the vehicle as being associated with CEVA Freight, LLC, as opposed to CEVA Logistics, LLC. *Id.* at 9.

Although Plaintiffs did not immediately file suit, their insurance and legal representatives began negotiations with a third-party claims administrator allegedly responsible for representing CEVA Logistics the following year. ECF No. 22-2, at 8-9. On August 14, 2020, an employee of Erie Insurance, Plaintiffs' insurance company, reached out to Scott Pitchon, an employee of Gallagher Bassett Services, Inc. – a claims services provider, about the accident. ECF No. 22-3, at 32. On February 16, 2021, Mr. Pitchon left Plaintiffs' counsel a voicemail message in which he identified himself as calling "regarding a matter involving our client, CEVA Logistics." *Id.* at 36. On May 18, 2021, Erie Insurance released CEVA Logistics, Mr. Weaser and Gallagher Bassett from all claims arising out of the incident relating to Mr. Mui. *Id.* at 42. In return, the claims administrator paid Mr. Mui's insurer $223.25. *Id.* According to a separate document, Mr. Pitchon, on behalf of CEVA Logistics, continued to communicate with Erie Insurance related to Ms. Mui until November 2022. *Id.* at 35. It is unclear if the value of Erie Insurance's claim on behalf of Mr. Mui would have been similar to that of Ms. Mui's.

On November 17, 2022, Plaintiffs filed a Complaint in this Court against CEVA Logistics, USA, Inc., as well as the driver of the vehicle who they named "John Doe." ECF No. 1, at 1. Plaintiffs specifically advanced a negligence claim on behalf of Ms. Mui against the driver of the vehicle, again named only as "John Doe," and similarly proceeded against CEVA Logistics, on the basis of *respondeat superior* liability. *Id.* at 3, 4. The Plaintiffs requested judgment for an amount in excess of $75,000. *Id.* at 6.

On January 20, 2023, CEVA Logistics moved to dismiss the Complaint, generally asserting that it was the wrong entity to sue as it had no relationship to the vehicle or individuals involved in the case. ECF No. 8-1, at 4. On February 3, 2023, Plaintiffs filed an Amended Complaint which was largely identical to their initial Complaint except that it named Shawn Weaser in place of the previously named "John Doe." ECF No. 12-1. On February 17, 2023, CEVA Logistics moved to dismiss the First Amended Complaint, raising the same arguments from its First Motion to Dismiss. ECF No. 19. On March 15, 2023, Mr. Weaser also moved to dismiss the First Amended Complaint, arguing that his addition ran afoul of the relevant statute of limitations. ECF No. 24. Both Motions have since been fully briefed. ECF Nos. 22, 26, 27, and 28.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b) provides that a party may move to dismiss claims where there is "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged." *Id.* The plaintiff need not plead facts that are probable, but must present facts showcasing more than a "sheer possibility" that the conduct perpetuated by a defendant is unlawful. *Id.* Indeed, Plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679.

The plaintiff additionally bears the burden of proving subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The district court should grant the motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## ANALYSIS

### I. CEVA Logistics's Motion to Dismiss.

Federal courts are courts of limited jurisdiction empowered by the United States Constitution to hear only certain cases and controversies. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546–47 (2016). The doctrine of standing is one mechanism which tests whether an action presents a justiciable case or controversy within the bounds of the authority Article III of the U.S. Constitution confers on federal courts. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing to assert a claim in federal court, a plaintiff must demonstrate (1) an injury in fact that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions, and not the result of the independent action of a third party; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Spokeo*, 136 S. Ct. at 1547–48; *Lujan*, 504 U.S. at 560–61.

CEVA Logistics asserts that Plaintiffs fail to meet the second prong of the test. ECF No. 19-1, at 5-6. The basis for CEVA Logistics's Motion to Dismiss arises out of Exhibit 3 to

Plaintiffs' Opposition to CEVA Logistics' First Motion to Dismiss – a photograph of the side of the truck which allegedly struck Plaintiffs' vehicle.[2] *Id.* at 8. Captured in the photo is a USDOT Serial Number which is associated not with CEVA Logistics, the corporate defendant in this case, but rather CEVA Freight, LLC. ECF No. 22-3, at 21. CEVA Logistics asserts that this, along with the affidavit of its Fleet Services Manager, establishes that any injury Plaintiffs may have suffered is not fairly traceable to the defendant company. ECF No. 19-1, at 7-12; ECF No. 26, at 2.

The matter is not as clear as CEVA Logistics asserts, and as it must be for the company's argument to prevail at the Motion to Dismiss stage. First, contrary to CEVA Logistics' characterization, all available evidence does not support Defendants' position. ECF No. 19-1, at 12 ("Plaintiffs have not and cannot set forth any facts and/or evidence suggesting that their injuries are fairly traceable and/or have a genuine nexus between the actions of CEVA Logistics US. Inc."). Most significantly, CEVA Logistics's name was printed on the rear of the vehicle which struck Plaintiffs' car. ECF No. 22-3, at 19. Additionally, for several months after the accident, a claims servicer acting on behalf of CEVA Logistics negotiated with Plaintiffs regarding compensation arising out of the accident. Although CEVA Logistics attempts to downplay the importance of the evidence by arguing that these representations arose in the distinct context of insurance negotiations, ECF No. 26, at 4, such criticisms are equally applicable to the USDOT database on which it primarily relies. Ultimately, both pieces of information are relevant to the Court's determination at this stage of the proceedings.[3] Neither party presents any authority requiring that

---

[2] The photograph was included again as an exhibit supporting Plaintiffs' Opposition to CEVA Logistics' Motion to Dismiss Plaintiffs' First Amended Complaint.   ECF No. 22-3, at 21.

[3] Defendants assert that the "agreement relied upon by Plaintiff was made completely independent of CEVA Logistics and does not pertain to the underlying cause of action asserting negligence

either piece of evidence be ignored entirely. While the DOT number, as well as the affidavit, strongly support Defendant's position, neither they, nor any other evidence presented in the record, explains why CEVA Logistics was listed on the rear of the vehicle, or why a representative, who identified himself as acting on behalf of CEVA Logistics, was negotiating with Plaintiffs regarding the accident that is the subject of the present lawsuit.

Furthermore, although CEVA Logistics asserts, without citation, that "CEVA Logistics is an independent entity separate and distinct from CEVA Freight, LLC," *id.* at 3, it seems that the parties have some relationship. According to CEVA Logistics AG's[4] 2020 Annual Report, "CEVA Logistics AG (the 'Company') was established as a holding company on 21 February 2018 in Switzerland." CEVA Logistics, *CEVA Logistics Annual Report* 9 (2020) https://www.cevalogistics.com/documents/2021-03/CEVA%20Logistics%20AG%20-%20Q4%202020%20FS.pdf. The Report includes a table of CEVA Logistics AG's "subsidiaries, joint ventures, associates and investments as [of] 31 December 2020." *Id.* at 54. The table includes both CEVA Logistics, LLC, as well as CEVA Freight, LLC. *Id.* at 58. Unsurprisingly, both corporations are frequent co-defendants in litigation. *See Fronda v. Staffmark Holdings, Inc.*, No. 15-cv-02315-MEJ, 2018 WL 2463101, at *2 (N.D. Cal. June 1, 2018) (approving a settlement with a class defined as "any and all individuals employed by the CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period"); *Boyd v. CEVA Freight,*

---

against CEVA Logistics." ECF No. 26, at 4. Without any support, the Court cannot accept this assertion.

[4] As discussed, CEVA Logistics, AG, although not wholly independent, is a distinct entity from CEVA Logistics, LLC, the Defendant in this case.

*LLC*, No. 3:13–cv–00150–JAG, 2013 WL 6207418 (E.D. Va. Nov. 27, 2013); *Burback v. Ceva Freight, LLC*, No. 11–cv–01862–RPM, 2013 WL 4027095 (D. Colo. Aug. 7, 2013); *Nipponkoa Ins. Co. v. Ceva Logistics, U.S., Inc.*, No. 11 Civ. 9040 (SAS), 2012 WL 2550278, at *1 (S.D.N.Y. July 2, 2012) ("In 2007, EGL merged with TNT Logistics to form CEVA Logistics, U.S., Inc. and CEVA Freight LLC"); *Smith v. Ceva Logistics, U.S., Inc.*, No. CV 09–4957 CAS RCX, 2011 WL 3204682 (C.D. Cal. Jul. 25, 2011). This information is not determinative of the Court's decision, but provides additional context in light of the conflicting evidence in this case, and CEVA Logistics's assertion regarding the companies' independence. As this Court has previously stated "[n]ames of corporate subsidiaries are sometimes distinguished by a single word, increasing the risk that a plaintiff may mistakenly name the wrong entity." *Charette v. Wexford Health Sources, Inc.*, No. CV CCB-19-33, 2022 WL 4449306, at *9 (D. Md. Sept. 23, 2022); *see also id.* at n. 13 (noting that "[f]or example, NIKE International Holding B.V., NIKE International Holding, Inc., NIKE International LLC, and NIKE International Ltd., are all Nike subsidiaries").

Given the evidence in dispute, the Court cannot conclude that Plaintiff has failed to establish subject matter jurisdiction as a matter of law at the motion to dismiss stage. *See Mayor and City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 492 (D. Md. 2019) (holding that in the context of a motion to dismiss the Plaintiff must allege facts sufficient to nudge from conceivable to plausible the allegation in their complaint); *In re Marriott International, Inc., Customer Data Security Breach Litigation*, 440 F. Supp. 3d 447, 467 (D. Md. 2020) ("While Defendants may ultimately show, after the opportunity for discovery, that the alleged injuries are not caused by their data breach, it is premature to dismiss Plaintiffs' claims on grounds of traceability."); *Springmeyer v. Marriot International, Inc.*, No. 20-cv-867-PWG, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021) (granting 12(b)(1) motion to dismiss where Plaintiff failed to

allege any facts supporting their conclusory statements); *Davis v. Biden*, No. ADC-21-2904, 2022 WL 2343966, at *3 (D. Md. June 29, 2022) ("'[M]uch more is needed' to prove standing than such cursory allegations where Plaintiff argues Defendant caused her injury through his 'allegedly unlawful regulation.'").

## II. Shawn Weaser's Motion to Dismiss

Statute of limitations defenses are ordinarily not considered in the context of a motion to dismiss. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller*, 224 F. Supp. 2d at 985. The Fourth Circuit has noted "that asserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular 'procedural stumbling block' for defendants." *CSX Transp., Inc. v. Gilkison*, 406 F.App'x 723, 728 (4th Cir. 2010). Accordingly,

> a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Forst*, 4 F.3d at 250 (4th Cir. 1993)). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." *Goodman*, 494 F.3d at 466.

Section 5-101 of the Courts & Judicial Proceedings Article of the Maryland Code provides that, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." The general rule for all civil actions in Maryland is that a cause of action accrues upon a breach or violation. *See e.g., Hecht v. Resolution Trust Group*, 333 Md. 324, 334 (1994); *Waldman v. Rohrbaugh*, 241 Md. 137, 139 (1966). However, if the plaintiff was not aware of the wrong, pursuant to the discovery rule, a cause of action will not accrue until the claimant "in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631, 636 (1981); *see also Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 668 (1983) (noting that the discovery rule "affords a reasonably diligent person . . . the full benefit of the statutory period in which to file suit, retains some degree of protection of a potential defendant's right to repose, and promotes judicial efficiency").

Plaintiffs do not dispute that they failed to add Mr. Weaser within three years from the date when the statute of limitations began to run, but instead argue that they should benefit from the "relation back doctrine" under Federal Rule of Civil Procedure 15(c)(1)(C). ECF No. 27-2, at 5. Pursuant to the Rule, a subsequent amendment relates back to the date of original filing when:

1) the amendment changes the party or the naming of the party against whom a claim is asserted;

2) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading;

3) the amendment occurred within the period provided by Rule 4(m) for serving the summons and complaint; and

    4) the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The "liberal amendment policies of the Federal Rules favor relation-back," *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 471 (4th Cir. 2007), and courts are instructed to "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2).

    The parties dispute whether Plaintiffs have satisfied the fourth requirement. *See* ECF No. 24-1, at 8-10; ECF No. 28, at 5-7. To prove such, "actual or constructive notice may suffice under the circumstances, and the notice may be effectuated through either formal or informal means." *See McDaniel v. Maryland*, No. CIV.A RDB–10–00189, 2010 WL 3260007, at *5 (D. Md. Aug. 18, 2010). Although "[m]ost parties substituted for 'Doe' defendants" would be prejudiced or would not have proper notice . . . [t]his is not an absolute bar[.] . . . [T]his Court has recognized situations where it is appropriate to substitute a new party for a Doe defendant." *See Gelin v. Baltimore Cnty., Md.*, No. CV GLR-16-3694, 2017 WL 3868530, at *4 (D. Md. Sept. 5, 2017); *see also Williams v. Kincaid*, 45 F.4th 759, 775-76 (4th Cir. 2022) (rejecting Defendants' argument on appeal that "naming a 'Doe' defendant does not constitute a 'mistake' under Rule 15(c)(1)(C)(ii)" because it was not raised below and because "Rule 15(c)'s emphasis on notice, rather than on the type of 'mistake' that has occurred, saves the courts . . . from an unguided and therefore undisciplined sifting of reasons for an amendment"); *McGraw v. Gore*, 31 F.4th 844, 851 (4th Cir. 2022) (rejecting Defendants' argument that seeking to substitute a named defendant for a previously named John Doe does not constitute a mistake under Rule 15(c): "[a]s Robinson explains, this court in *Goodman* . . . rejected formalism in evaluating 'mistake' under Rule 15(c)").

11

For example, in *McDaniel v. Maryland*, the plaintiff "assert[ed] several constitutional and common law causes of action against the State of Maryland, the Maryland Department of Transportation ("MDOT"), the Maryland Transportation Authority ("MDTA"), [a named] MDTA police officer . . . and an unknown MDTA police officer named as 'John Doe.'" No. CIV.A. RDB-10-00189, 2010 WL 3260007, at *1 (D. Md. Aug. 18, 2010). Although the plaintiff in *McDaniel* named the John Doe officer only after the date when the statute of limitations ran, the court concluded that the officer was "presumed to have received timely notice of th[e] lawsuit." *Id.*, at *5. The court based this conclusion on the fact that the officer's actions were described in the complaint and that he was allegedly depicted in the audiovisual recording of the event. *Id.* Finally, the Court reasoned that the officer would not "be prejudiced in any way as a result of being added as a defendant in this case . . . [as] the Office of the Attorney General ha[d] adequately defended McDaniel's interests and has asserted affirmative defenses on his behalf." *Id.* at 6.

Admittedly, not every decision from this Court has followed this approach. For example, in *Touko v. United States*, this Court found that while the Plaintiff's *Bivens* claims could proceed against the United States, the same claims against twelve non-named John Doe defendants could not because they were barred by the applicable statute of limitations. No. GJH-20-1113, 2021 WL 2685328 (D. Md. June 29, 2021). As in this case, the Court explained that "because the limitations period has expired since the Complaint was filed, and the statute of limitations has not been tolled, any future amendment of the Complaint to name the John Doe Defendants would be untimely unless it 'related back' to the date of the original Complaint." *Id.*, at *5. The court, however, concluded that even if such an amendment was made, it would not save plaintiff's claims against the unnamed officers because: 1) "[plaintiff] filed suit mere days before the limitations period expired, thereby not leaving time to discover the identities of the John Doe defendants through

12

pre-trial discovery, and made only modest pre-litigation efforts to obtain the identities"; 2) "he names twelve John Does without any identifying details and, for the most part, alleges their conduct generally"; and 3) "the 90-day period provided by Rule 4(m) already has run and plaintiff still has no knowledge of the proper party." *Id.,* at *6; *see also id.*, at *5 n. 8 (distinguishing a case where "there was clear evidence that the John Doe defendant had notice of the claim and the defendant was served within the 4(m) period"); *Gross v. Hopkins*, No. CV-BPG-17-3479, 2021 WL 978822, at *6 (D. Md. Mar. 15, 2021) (rejecting claim of relation back where "[t]he only description of officers was that there were 'more than twenty (20) police officers in [plaintiff Gross's] yard, dressed in SWAT-like, tactical gear' [because] [t]his general description is inadequate to put the Police Officer Defendants on notice that plaintiffs intended to sue them before they were named in the Third Amended Complaint after the statute of limitations expired"); *Williams v. Dix*, No. CV ELH-17-2381, 2018 WL 6831165, at *8 (D. Md. Dec. 27, 2018) ("Unlike in *McDaniel*, plaintiffs' Complaint did not specify the role of each Doe defendant who participated in the incident. Moreover, there is no basis in the submissions to establish that, prior to the expiration of the statute of limitations, the Deputy Sheriffs knew or should have known that they would be sued, but for plaintiffs' action in suing John/Jane Doe #1 through #7."); *Charette*, 2022 WL 4449306, at *9 ("Charrette only speculates that Rufael and Barry could share counsel with Wexford. Mere hints of shared representation do not establish constructive notice.").

    Several factors in this case encourage an approach similar to the one this Court adopted in *McDaniel*. In their original complaint, the Muis – like the plaintiff in *McDaniel* – described with sufficient detail the actions of Mr. Weaser, who was then unnamed. ECF No. 1. Specifically, the Complaint stated that the John Doe was operating a semi-trailer truck with a specific license plate, at a specific time, on a specific date, in a specific place. *See*, *e.g.*, *id.* at 3 ("At that same time and

place, John Doe was operating a Semi-trailer truck, with the license plate number 1011JD OK, owned by Ceva Logistics, for the purpose of interstate transportation of general freight, traveling eastbound on the Brooklyn-Queens Expressway in Brooklyn, New York.").

Additionally, as in *McDaniel*, Mr. Weaser is represented by the same counsel who represents CEVA Logistics, which was specifically named in the original complaint. *See* ECF No. 16, at 1; ECF No. 24-1, at 10. The action in this case has been limited to CEVA Logistics filing its own Motion to Dismiss; accordingly, Plaintiffs' failure to name him in the original Complaint has not prejudiced him. *See White v. City of Hagerstown*, NO. CV JKB-18-3232, 2020 WL 3034852, at *5 (D. Md. June 5, 2020) (rejecting relation back claim where "White did not provide notice of this lawsuit to Defendants Filges and Routhier until August 23, 2019 – more than 300 days after the expiration of the statute of limitations period"). Contrary to Mr. Weaser's arguments, ECF No. 28, at 6, merely because Plaintiffs named him after the statute of limitations ran does not automatically mean that he is prejudiced by Plaintiffs' failure to name him in the original Complaint. This argument is based on a misunderstanding of prejudice in this context – the relevant question is whether the newly named defendant will be prejudiced in the case going forward by the fact that he was not present for and could not participate in proceedings before he was named, not simply whether his naming after the statute of limitations has passed prejudiced him. *See* Fed. R. Civ. P. 15(c)(1)(C)(i) ("[R]eceived such notice of the action *that it will not be prejudiced in defending* on the merits.") (emphasis added). Were Mr. Weaser's argument correct, a plaintiff could never substitute in a new plaintiff after the statute of limitations had run, for in every case, the defendant would be prejudiced by the fact that he now has to defend against a case that the statute of limitations would otherwise bar. This would, in effect, negate the Rule. Third, although Plaintiffs waited to file the initial Complaint in this case, they allege this was due, as

discussed above, to a series of negotiations that they had with a claims administrator allegedly representing the corporate Defendant in this case. Finally, although not determinative, Mr. Weaser was named in communications between the insurer and claims administrator related to this litigation, further suggesting that he was aware of the allegations that resulted in the lawsuit.[5]

What complicates this case, however, is the uncertainty as to whether Mr. Weaser is, in fact, an employee of CEVA Logistics, the defendant in this case, or separately an employee of CEVA Freight, LLC. "While the relationship of employer/employee may not always provide constructive notice . . . it self-evidently is a circumstance to be considered." *Taylor v. MGM Resorts International*, No. CV-DKC 21-3192, 2023 WL 2894950, at *3 (D. Md. Apr. 11, 2023). However, given the uncertainty as to the answer to this question, as well as the other factors which cut in Plaintiffs' favor, the Court cannot conclude, at this time, that Mr. Weaser lacked notice such that an amendment would prejudice him. In addition to the four factors discussed above, the Court's decision is guided by the context of Mr. Weaser raising this argument upon a Motion to Dismiss. Accordingly, to the extent that he is able to elicit evidence during discovery that sufficiently establishes, for the purpose of a motion for summary judgment, that he did not have notice of the claims against him, he may re-raise this argument at that time. However, the Court cannot accept Mr. Weaser's argument at the present stage of the case given the applicable standard. *Id.* at *3 (applying relation back doctrine to allow amendment of John Doe employee where "[the employee] shares the same attorney as the MGM Defendants, and [his] interests as a defendant are

---

[5] Although the Fourth Circuit has emphasized that the focus under Rule 15 is on notice, as opposed to the type of "mistake," the fact that insurers had discussed Mr. Weaser further suggests that the failure to name Mr. Weaser was, in part, a genuine mistake, as opposed to a simple failure to have sufficient information regarding his identity. *See Collington v. Calvert County*, No. GJH-20-00966, 2023 WL 1415626, at *5 (Jan. 31, 2023) ("Naming 'John Doe' as a defendant, and then later substituting a named defendant once discovered, does not constitute a mistake.").

aligned with the MGM Defendants, whose liability is based on [his] through *respondeat superior*").

## CONCLUSION

Accordingly, for the aforementioned reasons, Defendant CEVA Logistics, LLC's Motion to Dismiss (ECF No. 19), and Defendant Shawn Weaser's Motion to Dismiss (ECF No. 24) are denied.

Date: June 27, 2023

                                                               /s/
                                                    Ajmel A. Quereshi
                                                    United States Magistrate Judge